**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

CHRISTINA MASCORRO; JOSE
MASCORRO,

     Plaintiffs - Appellees,

v.

CRAIG A. BILLINGS, as an individual
and as Murray County deputy sheriff,

     Defendant - Appellant,

and

STEVE WATKINS, Individually and as
Sulphur police officer; TONY SIMPSON,
Individually and as a Sulphur police
officer,

     Defendants.

No. 10-7005

CHRISTINA MASCORRO; JOSE
MASCORRO,

     Plaintiffs - Appellees,

v.

STEVE WATKINS, Individually and as
Sulphur police officer; TONY SIMPSON,
Individually and as a Sulphur police
officer,

     Defendants - Appellants,

and

No. 10-7006

CRAIG A. BILLINGS,

    Defendant.

---

**Appeal from the United States District Court
for the EasternDistrict of Oklahoma
(D.C. No. 6:09-CV-00218-FHS)**

---

Edmond Geary, Attorney at Law, Oklahoma City, Oklahoma, for the Mascorros.

David W. Lee (Emily B. Milan with him on the briefs) of Lee Law Center, P.C., Oklahoma City, Oklahoma, for Watkins and Simpson.

Ambre C. Gooch of Collins, Zorn & Wagner, Oklahoma City, Oklahoma, for Billings.

---

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.[*]

---

**O'BRIEN**, Circuit Judge.

---

Relying mostly on their version of events, Craig Billings, a Murray County Oklahoma deputy sheriff, and Steve Watkins and Tony Simpson, police officers with the City of Sulphur, Oklahoma police department, appeal from the district court's denial of their motion for summary judgment based on qualified immunity. But the Mascorros have a different version. Because, as the district court concluded, the issues are fact bound, we lack jurisdiction to consider the officers' arguments with respect to all but one

---

[*] We have decided Case No. 10-7005 on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

- 2 -

claim of error. As the evidence and reasonable inferences regarding that single claim, hot pursuit of a traffic offender, taken in the light most favorable to the Mascorros demonstrates a violation of a clearly established constitutional right, we affirm.

## I.  FACTUAL BACKGROUND[1]

Joshua Burchett is Christina Mascorro's son and Jose Mascorro's stepson. At the time of these events, Joshua was 17 years old. At 11:30 p.m. on July 23, 2007, Billings noticed Joshua was driving without taillights and turned around to pull him over. Joshua did not stop but drove two blocks to his parents' house, ran inside, and hid in the bathroom.

The front door is the only door to the Mascorro house. The Mascorros claim they woke to Billings kicking the door in a rage, swearing, threatening and ordering someone to open it and come outside. Christina testified to the following. She did not at first understand to whom Billings was referring. When Jose opened the door, Billings drew his gun, pointed it at Jose's head and yelled, "On your knees, motherf****r!" (Appellant Billings Appendix at p. 115.) Christina raised her voice to ask Billings to calm down and tell them what he wanted because she could not understand him. Billings answered, "I

---

[1] The officers make numerous impermissible arguments based on the facts as they see them. As noted in our discussion below, our limited review of a denial of summary judgment based on qualified immunity does not permit us to evaluate the district court's conclusions regarding the facts except in the most limited of circumstances. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (reversing denial of summary judgment on qualified immunity where videotape evidence clearly contradicted plaintiff's version of events). The district court found the Mascorros' evidence supporting their version of events sufficient to raise genuine issues of material fact. Our description of the facts reflects the district court's decision. We will not address arguments based on disputed facts.

want the mother F'er driving that car out here now." (Appellants Watkins & Simpson Appendix at 158.) After asking Billings what car he meant, Christina noticed her son's car in the driveway and said "That's my son's car. Oh, my gosh, what did he do?" (*Id.* at 158). Jose asked Billings if he had a warrant. As Christina started to turn away from the door Billings sprayed her in the face with pepper spray, and then stepped into the house and sprayed her again. Billings then sprayed Jose and Christopher, Christina's 14-year-old son, directly in the face as Christina retreated to the back bedroom to call 911. At some point after she completed her call, Officer Watkins retrieved her from the bedroom and led her outside.

According to Jose's testimony he retreated to the kitchen to try to wash the pepper spray from his face. "[A]s soon as [he] kn[e]w" another officer, later identified as Simpson, entered the kitchen and led him out of the house.[2] (Watkins and Simpson Appendix at p. 232.)

Billings informed Watkins and Simpson that Joshua had locked himself in the bathroom. The officers ordered Joshua to come out and, when he refused, Simpson drew his gun, kicked down the bathroom door, and took him into custody. The Mascorros contend Billings was visibly angry during the entire encounter, screaming at the top of his lungs and spitting with rage as he tried to speak and they did nothing to threaten or physically resist Billings in any way.

---

[2] Jose also filed a supplemental affidavit stating Watkins and Simpson were in the home seconds after Billings sprayed the Mascorros "so they had to be right behind [him]" when he used the pepper spray. (Appellants Watkins and Simpson Appendix at p. 263).

A number of other officers were present at the house when the Mascorros were taken outside. According to Christina's testimony, before Joshua was removed from the home, Billings approached her, pushed her up against a wall, and demanded to know where he was. When one of the officers suggested calling an ambulance Billings said, "No one is calling any ambulance." (Appellants Watkins & Simpson Appendix at p. 259). At some point, she requested an ambulance but Billings responded she did not need one. Nevertheless, an ambulance was called to the scene. Billings arrested Christina and Jose and cuffed them in the ambulance. Other officers escorted them with Christopher to the hospital. The three Mascorros were treated and released from the hospital, at which point officers took Christina and Jose to jail. They were both charged with obstructing a police officer in the performance of his duties and Christina was charged with aggravated assault and battery on a police officer because Billings alleged and subsequently testified that she poked him in the chest when he was standing at the front door before he sprayed her. They were released on bond later the same day. The state court eventually quashed the arrest and dismissed the charges, concluding Billings had entered the house illegally because no exigent circumstances justified his warrantless entry.[3] When they returned home, they found their belongings strewn about, trash cans upended, and a hole kicked in one wall.

---

[3] The Mascorros raised the issue of collateral estoppel below but on appeal merely ask us to "take notice" of the state court's determination that no exigent circumstances justified the warrantless home entry. (Appeal No. 10-7006, Appellee Br. at p. 7).

## II.    PROCEDURAL HISTORY

The Mascorros brought this action against Billings, Watkins and Simpson[4] asserting claims of unlawful entry, excessive use of force, false arrest, false imprisonment, and malicious prosecution.  Watkins and Simpson moved for dismissal on the excessive force and malicious prosecution claims.  The district court dismissed the Mascorros' claims of malicious prosecution against Watkins and Simpson under Rule 12(b)(6) of the Federal Rules of Civil Procedure but left all other claims intact.  The Mascorros moved for partial summary judgment and Billings, Simpson, and Watkins moved for summary judgment based on qualified immunity and other grounds.  The district court denied the Mascorros' summary judgment motion.  It granted Billings, Simpson, and Watkins' motions as to claims against them in their official capacities, but denied summary judgment on all other issues, including their qualified immunity defense.  The officers brought this interlocutory appeal on the single issue of whether they are entitled to qualified immunity.

## III.    DISCUSSION

A.    Issues We Cannot Address

The officers contend the district court erred in denying them qualified immunity on each of the Mascorros' claims.  However, their arguments concerning the excessive force, false arrest, false imprisonment and (against Billings) malicious prosecution claims are based solely on their version of events.  For instance, all the officers claim their

---

[4] The complaint and answer were both amended.  We recite the Mascorros' claims as set forth in the First Amended Complaint.

actions were justified because the Mascorros refused to hand over their son to the police

and Christina assaulted Billings. The Mascorros' version of events is different. Watkins

and Simpson allege they arrived too late to be held responsible for Billings' use of force

and the timing of their arrival made reliance on Billings' assertions at the scene

reasonable.[5] Again, the Mascorros saw it differently. The district court properly

determined genuine issues of material fact were present with respect to these claims. We

lack jurisdiction as to them.[6]

B.    The Issue We Can Address

As to the Mascorros' unlawful entry claim, however, the officers argue their entry

---

[5] It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

*Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). The district court concluded there was a question of fact regarding the timing of the officers' arrival, which calls into question whether, in fact, they had the opportunity to intervene at some point during the spraying and whether their subsequent acts were reasonable even if they lacked the opportunity to prevent the use of the pepper spray in the first instance.

[6] Orders denying qualified immunity are appealable to the extent that they resolve abstract issues of law. We will not hear an appeal when the question is the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact. An appeal is proper if the defendant sets off to show that the law was not clearly established at the time of the challenged action, or that qualified immunity is proper even under the plaintiff's version of the facts. Because we may review only legal issues, we must accept any facts that the district court assumed in denying summary judgment.

*Amundsen v. Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008) (citations and quotations omitted).

- 7 -

into the home was justified by probable cause to arrest Joshua for a traffic offense coupled with the exigent circumstances necessarily attending the pursuit of a fleeing suspect.[7] The facts relating to this narrow aspect of the unlawful entry claim are not disputed and therefore we may address the purely legal issue of whether the officers are entitled to qualified immunity with respect to that claim.

To defeat the officers' claim of qualified immunity, the Mascorros must show (1) the officers violated their constitutional or statutory rights, and (2) the violated rights were clearly established at the time of the events in question. *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010). We have discretion to determine which prong of the immunity defense to address first, in light of the circumstances of the case at hand, and may resolve the question by finding either requirement is not met. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).

## C.     Warrantless Entry into a Home

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quotation marks and citation omitted). "[T]he Fourth Amendment . . . prohibits police from effectuating a warrantless and non-consensual entry into a suspect's home to make a routine felony arrest." *Howard v. Dickerson*, 34 F.3d 978, 982 (10th Cir. 1994) (citing *Payton*, 445 U.S. at 576). Even an arrest warrant does not give

---

[7] This slim tendril of legitimate argument, buried as it is in larger, mostly improper, factual discussion, is the only reason we have not dismissed the appeal for lack of jurisdiction.

police carte blanche to enter any dwelling in search of the object of the warrant; while such a warrant permits entry into the suspect's residence to effectuate an arrest, entry into a third party's home for the same purpose requires a search warrant. *Steagald v. United States*, 451 U.S. 204, 222 (1981). If, however, police have probable cause for an arrest, the existence of certain exigent circumstances may "overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *Howard*, 34 F.3d at 982. "To determine the existence of an exigency, a court must consider the gravity of the offense supporting arrest." *Howard*, 34 F.3d at 982 (citing *Welsh*, 466 U.S. at 753). "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Welsh*, 466 U.S. at 750 (footnote omitted). The burden is on the government to demonstrate the existence of exigent circumstances. *Id.* at 749.

The officers justify their warrantless entry into the Mascorro home by probable cause to arrest Joshua coupled with an exigent circumstance -- pursuit of a fleeing suspect.[8] The Mascorros argue the "hot pursuit" of their son under these circumstances

_____

[8] Simpson and Watkins argue their entry was justified by the need to aid the Mascorros; they arrived only after Billings told them he had used his pepper spray. However, the Mascorros dispute the timing of Watkins and Simpson's entry and any discussion on that point is not appropriate here. *See Amundsen*, 533 F.3d at 1196. Simpson and Watkins also argue that under the "fellow officer rule," they were deemed to have relied on information possessed by Billings. *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). The Mascorros' evidence puts Watkins and Simpson at the scene when they were sprayed and they have sufficiently raised a question of fact with respect

did not constitute the kind of exigent circumstance excusing the officers from obtaining a warrant before entering their home. They do not dispute the relevant facts: Joshua was driving without taillights and he continued driving toward the house when Billings turned around to follow him. And they have not refuted Billings' assertion of probable cause to arrest their son for the traffic offense.[9]

In *United States v. Santana*, 427 U.S. 38 (1976), the Supreme Court concluded the exigent circumstances, based in part on hot pursuit of a suspect, were sufficient to rebut the presumption of unreasonableness generally attending the warrantless entry into a home. The officers entered Santana's home immediately following a controlled drug transaction when she retreated into her house, still in possession of the drugs, after the officers identified themselves and attempted to arrest her. *Santana*, 427 U.S. at 42-43. Santana was in the threshold of her home when officers approached and they pursued her into the vestibule into which she retreated without closing the front door. *Id.* at 40. The Court noted the potential for destruction of evidence once Santana had seen the police and concluded "a suspect may not defeat an arrest which has been set in motion in a

---

to whether Watkins and Simpson witnessed enough to preclude their reliance on Billings' statements.

[9] The officers also argue their entry was justified because Joshua eluded an officer in violation of Okla. Stat. Ann. tit. 21, § 540A. However, the Mascorros claim Billings did not have probable cause to arrest Joshua for eluding a police officer because while Billings may have activated his emergency lights he never deployed his siren or any other "audible signal" (a requirement under Oklahoma law) to signal pursuit. *See Aldridge v. State*, 674 P.2d 553, 554 (Okla. Crim. App. 1984). Those technicalities do not matter; whatever crime Joshua may have committed and for which he was pursued was a nonviolent misdemeanor raising no articulated concerns about possible destruction of evidence.

public place . . . by the expedient of escaping to a private place." *Id.* at 43.

Four years later the Court again addressed the issue of a warrantless arrest in a home. In *Payton v. New York*, it reiterated the requirement for police to have either a warrant or an ability to articulate exigent circumstances in order to enter a home even where circumstances would otherwise permit a warrantless arrest for a felony. 445 U.S. at 590. That is so because "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.*

Again addressing the question of warrantless entry, in *Welsh v. Wisconsin*, the Supreme Court noted "the Court in [*Payton*] explicitly refused to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." 466 U.S. at 742 (quotation omitted). Officers arrested Welsh in his home for a drunk driving offense after he left his vehicle at the scene of an accident. *Id.* at 740. The underlying exigency in *Welsh* was not pursuit, but preservation of evidence based on the need to collect blood and breath samples before alcohol dissipated from Welsh's system. *Id.* at 753. The Court decided the officers violated the Fourth Amendment by entering Welsh's home at night without a warrant to arrest him for a noncriminal traffic offense.[10] In so holding, the Court looked to the cases in which it had previously found exigent

---

[10] Driving under the influence was a "nonjailable traffic offense that constituted only a civil violation under the applicable state law" in Wisconsin at the time. *See Welsh*, 466 U.S. at 746 n.6.

- 11 -

circumstances permitting such an entry, including *Santana*. The cases involved felonies, and the "decision in *Payton*, allowing warrantless home arrests upon a showing of probable cause and exigent circumstances, was also expressly limited to felony arrests." *Id.* at 749 n.11. Because it concluded no exigent circumstances existed, the Court had "no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses" but held the nature of the underlying offense was an important consideration when determining the reasonableness of a warrantless entry:

> [A]n important factor to be considered when determining whether **any** exigency exists is the gravity of the underlying offense for which the arrest is being made. . . . [A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is a probable cause to believe that only a minor offense . . . has been committed.

*Id.* at 749 n.11, 753 (emphasis added).

Immediately after *Welsh*, we decided *Bledsoe v. Garcia*, 742 F.2d 1237, 1241 (10th Cir. 1984). In *Bledsoe*, officers had probable cause to arrest for the misdemeanor violation of absence without leave from military duty (A.W.O.L.) and permitted the arrestee to reenter his parents' home to tell his mother he was going to jail. *Id.* at 1238. Officers heard the residents of the house react with profanity and yelling as someone told the arrestee he was "not going anywhere with that son-of-a-bitch." *Id.* Bledsoe's mother came to the door and told the officers they "were not coming in." *Id.* The officers nevertheless entered the home in pursuit of the arrestee, who escaped. *Id.* We held the occupants' disturbing reaction, coupled with resistance to the officers' efforts and the possibility of flight, justified the warrantless entry. *Id.* at 1241. Acknowledging the

- 12 -

requirement imposed by *Welsh*, we characterized the A.W.O.L. violation as a "serious offense" pointing out it was a misdemeanor "just below the general definition of a felony" and held it was not error for the district court to fail to instruct the jury on exigent circumstances where "undisputed evidence" showed exigent circumstances existed. *Id.* ("Nevertheless, giving consideration to the gravity of the A.W.O.L. offense as we must in evaluating the exigency of the circumstances and the circumstances as a whole, we hold that the exception of exigent circumstances applied here.") (citation omitted).

We do not find the circumstances here amount to the kind of exigency excusing an officer from obtaining a warrant before entering a home. The intended arrest was for a traffic misdemeanor committed by a minor, with whom the officer was well acquainted,[11] who had fled into his family home from which there was only one exit. The risk of flight or escape was somewhere between low and nonexistent. Moreover, there was no evidence which could have potentially been destroyed[12] and there were no officer or

---

[11] Billings testified he recognized Joshua because he previously had contact with him for drug violations and he was also a neighbor. From his testimony one might infer he knew Joshua was a minor.

[12] In a hot pursuit case, warrantless entry is in part justified by the significant risk that the evidence would no longer be in the suspect's possession if the police waited until a warrant could be obtained. In such cases, however, the intrusion is also justified by the suspect's flight, which frustrates police efforts to make a legitimate warrantless arrest.

*Aquino*, 836 F.2d at 1271 (discussing *Santana* as "hot pursuit of a fleeing felon") (citation and quotation omitted). Billings claims his prior drug-related contact with Joshua led him to believe Joshua might have drugs concealed on his person but he offers nothing approaching probable cause to arrest Joshua for any drug crime. In any event, the district court found there was no basis for entry based on any imminent destruction of evidence and we will not consider the argument based on Billings' version of the facts.

public safety concerns.  There is nothing to indicate the sort of "real immediate and serious consequences" of postponing action to obtain a warrant required for a showing of exigent circumstances.  *See Welsh*, 466 U.S. at 751.  The warrantless entry based on hot pursuit was not justified.

D.    Clearly Established Law

> Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances []he confronted.  Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citations omitted).  "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 199 (quotation omitted).   We do not view the relevant precedent "cast at a high level of generality" but look for "clear law (clear answers) that would apply to the situation at hand." [13]  *Id.*

---

[13] "[I]n an obvious case, these [more general] standards can 'clearly establish' the answer, even without a body of relevant case law," *Brousseau*, 543 U.S. at 199 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("noting in a case where the Eighth Amendment violation was 'obvious' that there need not be a materially similar case for the right to be clearly established").  *Hope v. Pelzer*, which involved punishment of a prisoner already in custody, is not appropriately applied to the sort of dynamic situation we are called to analyze here.  Context is everything; applying the standards set forth in a case like *Hope v. Pelzer* to this case would be akin to the Ninth Circuit's over-reading of Supreme Court precedent in *Musladin v. Lamarque*, 427 F.3d 653 (9th Cir. 2005).  The Ninth Circuit applied as "clearly established law" the Supreme Court's decisions in *Estelle v. Williams*, 425 U.S. 501 (1976) (analyzing prejudicial effect of compelling a criminal defendant to appear for trial in prison clothing) and *Holbrook v. Flynn*, 475 U.S. 560 (1986) (applying *Estelle* test to presence of uniformed state troopers for security at

- 14 -

The constitutional right was clearly established for purposes of qualified immunity if it would have been clear to a reasonable officer at the time the officers entered the Mascorro house that their entry was unlawful under the circumstances presented. *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008). For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010). In the alternative, "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quotations omitted).

Relevant precedent clearly prohibits police from routinely entering a person's home to effectuate a warrantless arrest (even if the officers have probable cause to believe the person committed a felony), *see Payton*, 445 U.S. at 576, and a minor offense does not permit warrantless entry into the home except in the most extraordinary of circumstances.[14] *See Welsh*, 466 U.S. at 753 ("[I]t is difficult to conceive of a

---

trial). The Ninth Circuit granted habeas relief because it concluded the state court acted unreasonably in failing to apply the *Estelle* and *Holbrook* principles to spectators. *Musladin*, 427 F.3d at 656-57. The Supreme Court reversed, concluding the extension of concern about the conduct of state actors to that of spectators was too great to support the Ninth Circuit's conclusion. *Carey v. Musladin*, 549 U.S. 70, 77 (2006). ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court unreasonably applied clearly established Federal law.") (quotation omitted).

[14] The officers point to a single case in which we implied in dicta a willingness to interpret *Welsh* as permitting warrantless entry based on pursuit for minor offenses, s*ee United States v. Aquino*, 836 F.2d 1268, 1272 n.4 (10th Cir. 1988) (characterizing the holding of *Welsh* as "a nonjailable traffic offense could not support a warrantless entry *absent hot pursuit*. . . .") (emphasis added). *Aquino*, however, involved destruction of

warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor."). Our focus must be on whether an exception to bedrock constitutional principles clearly exists. There appears to be no relevant precedent announcing such an exception in cases such as this.

While hot pursuit of a felon might be sufficient, neither the Supreme Court nor this Court[15] has ever found an entry into a person's home permissible based merely on the pursuit of a misdemeanant; additional circumstances have always dictated the result. *Santana* involved a hot pursuit of a fleeing felon as well as possible destruction of evidence and was decided before the Supreme Court's admonition in *Welsh* that the seriousness of the offense for which officers seek to effectuate an arrest is a vital

---

evidence, not pursuit, and we do not consider a stray sentence characterizing Supreme Court precedent in the footnote of an opinion sufficient to cast doubt on the overwhelming weight of authority in this matter.

[15] The officers rely heavily on an unpublished case, *Sanchez v. Ulibarri*, 308 Fed. App'x 280 (10th Cir. 2009), in which the arresting officer observed Sanchez exhibiting signs of intoxication in a convenience store and followed him after he pulled out onto the road. *Id.* at 282. The officer, who was in an unmarked vehicle, watched Sanchez weave for two or three blocks and radioed for a marked car to pull him over. *Id.* When Sanchez nearly collided with oncoming traffic and forced another car off the road, the officer activated his emergency lights and siren to pull Sanchez over himself. *Id.* Sanchez fled and the chase ended in his driveway where he refused to stop walking toward the house and told the officer he could not be arrested on his own property. *Id.* The officer stepped across the threshold of the home with him, the two men struggled, and the officer dragged Sanchez from the house and arrested him. *Id.* We concluded there were exigent circumstances because the officer could reasonably have believed Sanchez posed a danger to the public and because "a suspect may not thwart an otherwise proper arrest that was set in motion in public by fleeing and retreating to his home." *Id.* at 284. However, because this was a habeas action, we merely decided the state court had not unreasonably applied the Fourth Amendment even though it did not discuss *Welsh* in its analysis; we therefore discount it.

component of **any** exigent circumstances justifying warrantless entry into the home. *Bledsoe* involved volatile behavior on the part of the occupants of the house and an adult male arrestee who, though living with his parents at the time of the warrantless entry, had been living in another state until a few months before officers attempted to arrest him. *Bledsoe*, 42 F.2d at 1241. The AWOL offense at issue in *Bledsoe* is itself a flight offense presenting heightened concerns of escape, which was borne out when the suspect evaded arrest even though officers immediately entered the home in pursuit. *Id*. We also recognized the Supreme Court's admonition in *Welsh* regarding the significance of the offense underlying the entry and characterized the AWOL offense as a serious one.

We do not rely on generalities in our application of the "clearly established" standard here. The specific and identifiable facts of the relevant cases make clear the sort of exigent circumstances permitting officers to enter a suspect's home without a warrant in pursuit of the suspect – they must involve a serious offense coupled with the existence of an immediate and pressing concern such as destruction of evidence, officer or public safety, or the possibility of imminent escape. These officers do not even argue such concerns were present or that the traffic violation for which Billings had probable cause to arrest Joshua constituted a serious offense. No reasonable officer would have thought pursuit of a minor for a mere misdemeanor traffic offense constituted the sort of exigency permitting entry into a home without a warrant.