MORITZ, Circuit Judge,
dissenting:
Undeniably, Samuel Pauly’s tragic shooting should never have occurred. So at first glance, it’s hard to find fault with the majority’s lengthy and compelling discussion of Officers Mariscal’s and Trues-dale’s questionable actions leading up to the tragedy, But the majority’s preliminary focus on those two officers, though effectively placed, is legally misplaced. That’s because neither Officer Mariscal nor Officer Truesdale shot Samuel Pauly. Instead, Officer White fired the bullet that killed Samuel Pauly. In some cases, this might be the proverbial distinction without a difference. But that is decidedly not the case here because, as the majority recognizes, Officer White came late to the scene and can’t be held responsible for the acts of Officers Truesdale and Mariscal.
The majority nevertheless finds that even considering Officer White’s actions separately, a reasonable jury could conclude he used excessive force in shooting Samuel Pauly. But, in reaching that conclusion, the majority impermissibly second-guesses Officer White’s split-second decision to use deadly force in self-defense. I would find that under the unique circumstances of this case, Officer White clearly did not use excessive force in shooting Samuel Pauly; thus, no constitutional violation occurred. And if no constitutional violation occurred, the law won’t permit us to pin liability on those officers who perhaps should bear responsibility: Truesdale and Mariscal. Instead, all three officers are entitled to immunity.
*1085 I also disagree with the majority’s conclusion that the plaintiffs’ facts, accepted as true, establish that Officer White’s use of deadly force violated clearly established law. To arrive at this determination, the majority mistakenly defines clearly established law at a high level of generality, engaging in exactly the type of review our Supreme Court has consistently cautioned against. As the Court recently reiterated, “[t]he dispositive question is ‘whether the violative nature of particular conduct is clearly established.’ ” Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011)).
Because I would conclude Officer White’s use of deadly force was objectively reasonable and didn’t violate clearly established law governing the use of deadly force, I would reverse and remand with directions to grant summary judgment in favor of all three defendants.
DISCUSSION
The doctrine of qualified immunity insulates law enforcement officers from civil liability for the use of excessive force— even deadly force — unless their actions violate clearly established statutory or constitutional rights. Taylor v. Barkes, — U.S. —, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). “For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers’ actions apparent.” Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir.2011). This does not “require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.” Mullenix, 136 S.Ct. at 308 (quoting al-Kidd, 131 S.Ct. at 2083). “When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.” Barkes, 135 S.Ct. at 2044 (alteration in original) (quoting al-Kidd, 131 S.Ct. at 2085).
When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to demonstrate (1) the defendant violated a constitutional right and (2) the contours of that right were “clearly established” at the time of the violation. Thomas v. Durastanti, 607 F.3d 655, 662 (10th Cir.2010). If the plaintiff doesn’t satisfy “‘[t]his heavy two-part burden ... the defendants are entitled to qualified immunity.’ ” Felders ex rel. Smedley v. Malcom, 755 F.3d 870, 877-78 (10th Cir.2014) (quoting Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir.2001)), cert. denied sub nom. Malcom v. Felders, — U.S. —, 135 S.Ct. 975, 190 L.Ed.2d 890 (2015).
I. Officer White is entitled to qualified immunity because his actions were objectively reasonable under the circumstances.
Because the plaintiffs allege Officer White violated Samuel Pauly’s Fourth Amendment right to be free from excessive force, they must demonstrate that White’s use of deadly force was objectively unreasonable. See Havens v. Johnson, 783 F.3d 776, 781 (10th Cir.2015). As the majority acknowledges, an officer’s use of deadly force is objectively reasonable if a reasonable officer confronted with the same circumstances would have had probable cause to believe that he or she faced an immediate threat of serious physical harm. Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Thomas, 607 F.3d at 664, 670.
We generally consider several non-exclusive factors in assessing the degree of threat a suspect poses to the officer, including “(1) whether the officers ordered the suspect to drop his weapon, and the *1086 suspect’s compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect.” Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1314-15 (10th Cir.2009) (quoting Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir.2008)).
These factors, while significant, only assist us in making the ultimate determination, which is “whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force.” Tenorio v. Pitzer, 802 F.3d 1160, 1164 (10th Cir.2015) (quoting Estate of Larsen, 511 F.3d at 1260). Moreover, in the qualified immunity context, an officer’s on-scene judgment regarding the level of force that is necessary “need not be correct — in retrospect the force may seem unnecessary — as long as it is reasonable.” Id.
Viewing the plaintiffs’ factual -allegations as true and considering the totality of the circumstances known to Officer White from the perspective of an objectively reasonable officer in White’s position, I would conclude the plaintiffs haven’t demonstrated a Fourth Amendment violation.
When Officer White arrived at the Pau-lys’ house, he saw Officer Mariscal in the front yard and he heard Officer Trues-dale’s voice near the back of the house. He saw people moving inside the house. Within seconds of his arrival, Officer White heard one of the Pauly brothers yell, ‘We have guns.” Aplt.App. 680. Officer White took cover behind a stone wall about 50 feet from the front of the house. Officer Mariscal took cover behind a -nearby truck. Both officers drew their weapons.. A few seconds later, Officer White heard two gunshots fired near Officer Truesdale’s location at the rear of the house. Officer White believed that Trues-dale had been shot.[1] Within seconds of hearing those two shots, Officer White saw Samuel Pauly lower the front window, hold his arm out, and point a handgun directly at White. Four or five seconds later, Officer White fired his weapon, shooting and killing Samuel Pauly.
Even under plaintiffs’ version of the facts, these material facts are uncontro-verted. And given these facts, Officer White’s use of deadly force was unquestionably justified. But the majority concludes that “a jury could find a reasonable officer in Officer White’s position would not have probable cause to believe there was an immediate threat of serious harm to himself or to Officer Mariscal, who was also behind cover, such that he could shoot Samuel Pauly through the window of his home without giving him a warning.” Maj. Op. 43.
In reaching this conclusion, the majority purports to separately consider the three Graham[2] factors and the four non-exclusive Thomson factors, but ultimately cher *1087 ry-pieks two Thomson factors it finds “particularly relevant” to Officer White’s on-scene threat assessment: the distance separating Samuel Pauly and White, and White’s failure to warn Samuel before shooting him. Maj. Op. 37. However, the majority’s analysis of these two factors is flawed.[3]
Focusing on the distance between Samuel Pauly and Officer White, the majority speculates that a reasonable officer in White’s position wouldn’t have perceived an immediate threat of physical harm because (1) White was 50 feet away from Samuel; (2) White was “sequestered” behind the rock wall; and (3) Samuel’s view of White may have been obscured by the darkness and the rain. Maj. Op. 39-42.
I don’t disagree that an officer’s distance from the suspect and the existence of cover are important considerations in assessing whether the officer’s use of deadly force was objectively reasonable.[4] But the majority brushes aside this court’s precedent in determining that these factors undermine the reasonableness of Officer White’s actions in this case.
Our precedent with the most analogous facts—Wilson v. Meeks, 52 F.3d 1547 (10th Cir.1995), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)—is also the most compelling. There, as here, the family of a man shot and killed by a police officer sought civil damages under § 1983. We found the officer entitled to qualified immunity, reasoning that the confrontation leading to the fatal shooting “transpired in less than a minute,” the plaintiffs failed to produce evidence to rebut the officer’s assertion that the decedent aimed a handgun at the officer, and “[a]ny police officer in [the officer’s] position would reasonably assume his life to be in danger when confronted with a man whose finger was on the trigger of a .357 magnum revolver pointed in his general direction.” Id. at 1549, 1554.
Despite these similar circumstances, the majority stretches to distinguish Wilson, pointing out that the shooting officer in that case was exposed rather than “sequestered” behind a rock wall. Maj. Op. 1081, 1081-82.[5] Yet in endeavoring to af *1088 fix liability on the shooting officer here, the majority ignores circumstances that unquestionably rendered the threat to Officer White even more immediately compelling than those faced by the shooting officer in Wilson.
Here, Officer White was confronted with one man pointing a gun in his direction and another man who he reasonably believed was somewhere outside and had just shot White’s fellow officer. Notwithstanding these exceedingly fluid and highly threatening circumstances, the majority suggests that a reasonable officer in Officer White’s position should essentially have called a time out while he contemplated the most prudent course of action. And during that time out, the majority presumes Officer White — or a reasonable officer in his shoes — would have discounted the threats posed by an armed suspect pointing a handgun in his direction and a second armed suspect in close proximity as non-immediate threats because the officer was himself behind a partial rock wall and the suspect who was pointing a gun at him was 50 feet away.[6]
In my view, no objectively reasonable officer in Officer White’s circumstances and with White’s knowledge of these circumstances could have been expected to hold his fire. And to suggest he should have done so because of his less than fully protected position some 50 feet away seems the epitome of “second-guessing.” Yet the majority’s speculation doesn’t stop there. Piggybacking off of its judgment that Officer White faced no immediate threat given his “protected” position, the majority further decrees that a reasonable officer in White’s position would have shouted a warning before using deadly force.
As the majority acknowledges, a warning need only be given “where feasible.” Garner, 471 U.S. at 11-12, 105 S.Ct. 1694 (emphasis added); see also Thomson, 584 F.3d at 1321 (rejecting plaintiffs argument that unleashing police dog without a warning created the need to use deadly force and concluding “[a] warning is not invariably required even before the use of deadly force ... ”). In concluding such a warning was feasible here, the majority primarily relies on the professional opinion of the plaintiffs’ expert witness, Glenn A. Walp, who testified in a deposition, “I feel that there was an extensive amount of time to at least yell something to the effect ... of ‘State Police, drop your weapon.’ ” Maj. Op. 1080.[7]
With all due respect to Mr. Walp, we’ve previously discounted the use of expert testimony to undermine the reasonableness of an officer’s on-scene judgment and we should do the same here. See Thomson, 584 F.3d at 1320-21 (rejecting *1089 plaintiffs’ reliance on expert testimony that release of attack dog was “inadvisable,” reiterating the need to avoid 20/20 hindsight, and concluding, “We cannot now consider whether other actions would have been more appropriate or, indeed, optimal”). See also Saucier v. Katz, 533 U.S. 194, 216, n. 6, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (Ginsburg, J., concurring in judgment) (“[I]n close cases, a jury does not automatically get to second-guess these life and death decisions, even though plaintiff has an expert and a plausible claim that the situation could better have been handled differently.” (quoting Roy v. Inhabitants of Lewiston, 42 F.3d 691, 695 (1st Cir.1994))).[8]
I would find Mr. Walp’s speculation about what other actions Officer "White could’ve or should’ve taken before shooting Samuel Pauly immaterial to the question of whether what he actually did was objectively reasonable. See Cole v. Bone, 993 F.2d 1328, 1334 (8th Cir.1993) (“The Constitution, however, requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision.”). And I would view Gamer’s general proposition that a warning be given where feasible as yet another reminder of our paramount duty to judge “[t]he ‘reasonableness’ of a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Graham, 490 U.S. at 396, 109 S.Ct. 1865. The majority’s contrary view ignores our Supreme Court’s directive to consider, in the “calculus of reasonableness,” the fact that police officers often are required to make split-second judgments — in “tense, uncertain, and rapidly evolving” circumstances— “about the amount of force that is necessary in a particular situation.” Id. at 396-97, 109 S.Ct. 1865.
Simply stated, I am unwilling to view Officer White’s actions through the improper lens of hindsight from the comfort of my chambers. See Phillips v. James, 422 F.3d 1075, 1080 (10th Cir.2005) (“What may later appear to be unnecessary when reviewed from the comfort of a judge’s chambers may nonetheless be reasonable under the circumstances presented to the officer at the time.” (citing Graham, 490 U.S. at 396, 109 S.Ct. 1865)). Instead, I would conclude the plaintiffs have not met their heavy burden to demonstrate a constitutional violation. And while I share the majority’s concern about the actions of the non-shooting officers prior to Officer White’s arrival, those actions shouldn’t factor into our analysis of whether White’s use of force was reasonable under the unique circumstances of this case.
II. Even if Officer White’s actions were objectively unreasonable, White is entitled to qualified immunity because the law was not clearly established that he could not use deadly force in the circumstances confronting him.
Even accepting the majority’s conclusion that Officer White’s use of deadly force was objectively unreasonable, I disagree with the majority’s ultimate conclusion that “a reasonable officer in Officer White’s position should have understood, based on clearly established law, that (1) *1090 he was not entitled to use deadly force unless he was in danger at the exact moment of the threat of force and (2) he was required, under the circumstances, to warn [Samuel] Pauly to drop his weapon.” Maj. Op. 1084.
To support its first point, the majority relies on Graham and Allen v. Muskogee, 119 F.3d 837 (10th Cir.1997), for the general proposition that an officer may not use deadly force unless he or she faces the immediate threat of physical harm. But the majority’s reliance on these cases to define the clearly established law governing this case directly contravenes the Supreme Court’s warnings against “defining] clearly established law at a high level of generality.” Mullenix, 136 S.Ct. at 308 (quoting al-Kidd, 131 S.Ct. at 2084). The Court has repeatedly cautioned “that Garner and Graham, which are ‘cast at a high level of generality,’” offer little guidance in determining the reasonableness of an officer’s actions in a particular case. Plumhoff v. Rickard, — U.S. —, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014).
The Court recently and strongly reaffirmed this principle in Mullenix. There, the Court reversed a Fifth Circuit decision denying qualified immunity based on that Circuit’s conclusion that “the law was clearly established such that a reasonable officer would have known that the use of deadly force, absent a sufficiently substantial and immediate threat, violated the Fourth Amendment.” Mullenix, 136 S.Ct. at 308 (quoting Luna v. Mullenix, 773 F.3d 712, 725 (5th Cir.2014), rev’d — U.S. —, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)). The Court explained that “[t]he dispositive question is ‘whether the viola-tive nature of particular conduct is clearly established.’ ” Id. (quoting al-Kidd, 131 S.Ct. at 2084). And, in concluding that the shooting officer in Mullenix was entitled to qualified immunity, the Court explicitly noted that “none of [its] precedents ‘squarely governed]’ the facts” confronted by that officer. Id. at 310.
Yet, in its attempt to- lessen the impact of Mullenix, the majority seemingly adopts the rationale of the dissenting justice in Mullenix by suggesting that any reasonable officer in Officer White’s position would have had “fair notice” from Graham that he couldn’t use deadly force in the circumstances he confronted and that no case more specific than Graham is required. Maj. Op. 1083-84. See Mullenix, 136 S.Ct. at 314 (Sotomayor, J., dissenting) (citing Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) for the proposition that “the crux of the qualified immunity test is whether officers have ‘fair notice’ that they are acting unconstitutionally”).
Notably, the Mullenix majority pointed out that the dissenting justice only repeated the Fifth Circuit’s error in defining the qualified. immunity inquiry at a high level of generality. Mullenix, 136 S.Ct. at 311. In doing so, the Court stated, “[Wjhatever can be said of the wisdom of [the officer’s] choice [to use deadly force], this Court’s precedents do not place the conclusion that he acted unreasonably in these circumstances ‘beyond debate.’ ” Id. (quoting al-Kidd, 131 S.Ct. at 2074).
Likewise, the extant ease law here doesn’t place the conclusion that Officer White acted unreasonably under the circumstances beyond debate. Significantly, the only “particular conduct” the majority suggests violated clearly established law is Officer White’s failure to issue a warning before using deadly force.
But, like the cracked foundation underlying the majority’s first point, the foundational support for its second point also shows signs of strain. As stated, “[a] warning is not invariably required even before the use of deadly force”; rather, an officer must issue a warning “where feasi *1091 ble.” Garner, 471 U.S. at 11-12, 105 S.Ct. 1694; Thomson, 584 F.3d at 1304. Such language hardly mandates a finding that a failure to warn in particular circumstances is clearly established. Nevertheless, the majority expects a reasonable officer to understand extant case law as clearly establishing that a warning is not only feasible, but required, when the officer (1) is faced with two armed suspects, one pointing a gun at the officer from inside a house; (2) is partially protected by a stone wall; (3) is separated from the most immediate threat by 50 feet; and (4) in hindsight, has at least 5 seconds to shout a warning before firing his own weapon.
Simply stated, neither Gamer nor any of the cases properly interpreting it would have caused a reasonable officer in Officer White’s position to understand that “he was required, under the circumstances here, to warn [Samuel] Pauly to drop his weapon.” Maj. Op. 1084. Because none of the eases cited by the majority are “close enough [to] on point to make the unlawfulness of [Officer White’s] actions apparent,” Mascorro, 656 F.3d at 1208, I would conclude Officer White is entitled to qualified immunity.
III. Officers Truesdale and Mariscal are entitled to qualified immunity because Officer White did not use excessive force.
Because I would conclude that Officer White didn’t violate Samuel Pauly’s Fourth Amendment right to be free from the use of excessive force, and, alternatively, didn’t violate clearly established law governing the use of deadly force, I would also conclude that Officers Truesdale and Mariscal are entitled to qualified immunity. See, e.g., Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420-21 (4th Cir.1996) (explaining jury’s finding that shooting officer didn’t use excessive force absolved non-shooting officers of liability); McLenagan, 27 F.3d at 1008 (explaining that even if non-shooting officer’s action or failure to act contributed to use of force, issue of liability was mooted by finding that shooting officer didn’t use constitutionally excessive force).
Conclusion
Officer White did what any objectively reasonable officer in his position would do — respond in kind to the immediate threat of deadly force. Because the plaintiffs fail to establish either that Officer White’s use of deadly force was objectively unreasonable-or that it violated clearly established law, I would reverse the district court’s rulings and grant all three defendants’ motions for summary judgment on qualified immunity grounds with respect to the plaintiffs’ § 1983 claim.

. The majority implies that Officer White's belief on this point was less than credible because he also testified in his deposition that he “did not hear anything that would suggest a person had been hit.” Maj. Op. 1066-67, n. 3 & 1077-78. In doing so, the majority overlooks two points. First, the district court's order demonstrates that Officer White's belief on this point was uncontroverted. See Aplt.App. 680 ("Having heard two rifle shots, Officer White believed that Officer Truesdale had been shot.”). Second, even if the majority doubts the reasonableness of Officer White's subjective belief as to whether Officer Trues-dale had been shot, the question before us is whether a reasonable officer having heard two gunshots near the location of his or her fellow officer — an officer who is out of sight in the dark — would have had an objective basis for sharing White's belief. In my view, Officer White’s uncontroverted subjective belief is objectively reasonable.

. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

. The majority’s seven-factor approach seemingly overlooks that the four Thomson factors merely flesh out the second Graham factor— i.e., whether the officer faced an immediate threat from the suspect. ■

. The majority also suggests a reasonable officer would have taken comfort in the knowledge that Samuel Pauly "aim[edj his gun through the open window of a lighted house toward a target obscured by the dark and rain.” Maj. Op. 1081. This suggestion warrants little discussion. Even though a reasonable officer would know Samuel Pauly was looking into the darkness, we can’t expect a reasonable officer to know whether that darkness impaired Samuel's ability to find a target. Wilson v. Meeks, 52 F.3d 1547, 1553-54 (10th Cir.1995), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("Qualified immunity does not require that the police officer know what is in the heart or mind of his assailant. It requires that he react reasonably to a threat.”). The majority’s determination that the fourth Thomson factor is "neutral” similarly suggests that a reasonable jury could find a reasonable officer in Officer White's position would have known what the Paulys were thinking — namely, that the Paulys believed they were protecting their home from unknown intruders. Maj. Op. 1078-79. Yet the fourth factor requires consideration only of the “manifest” intentions of the suspect. In this case, Samuel Pauly manifested his intentions quite clearly and this factor, far from being neutral, weighs in favor of Officer White's decision to shoot.

.The majority’s characterization of Officer White’s position as "sequestered” behind the stone wall inaccurately implies that he viewed the scene from a fully protected vantage point. It’s true that Officer White testified in deposition that he took cover behind a stone wall 50 feet from the house. But Officer White further explained that he knelt behind *1088 the wall and rested his arms on top of it as he pointed his gun in the general direction of the house and that his head and arms remained fully exposed. White Depo., Doc. 84-3, at 4. Thus, far from being "sequestered,” Officer White was kneeling in a vulnerable position behind a short rock wall — a wall that at most provided partial cover from the armed suspect pointing a gun at him and potentially no cover from the second armed suspect whose exact location outside was unknown.

. Moreover, the majority’s suggestion that the 50-foot distance between Samuel Pauly and Officer White somehow weighs in favor of the plaintiffs here is mystifying. Not surprisingly, the majority offers no authority suggesting that the “distance” factor has any relevance in circumstances where an officer is confronted with a suspect pointing a gun directly at him. Nor am I aware of any such authority.

. The district court determined, based on Officer White's testimony, that White shot Samuel Pauly "[f]our to five seconds after Samuel Pauly pointed his handgun at Officer White.” Aplt.App. 681. As the majority acknowledges, Mr. Walp assumed "for the sake of argument” during his deposition that the five-second interval was accurate. Maj. Op. 1080.

. Comparing the circumstances of Tenorio, the majority appears to suggest that Officer White had plenty of time to shout a warning before shooting Samuel Pauly. Maj. Op. 1080-81. But Tenorio's markedly different circumstances simply don’t permit this comparison. See Tenorio, 802 F.3d at 1164-65 (officer shot man who held a small kitchen knife but made no hostile motions toward the officer). Here, the majority explicitly recognizes that Samuel Pauly made a hostile motion toward Officer White by pointing a gun at him. Maj. Op. 1078-79.