**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DEANNA WEST,

     Plaintiff - Appellant,

     v.

KELLY KEEF; DENNIS ROSS;
GARY KUHN; THEODORE
BEAVER; JEFF TANKSLEY,

     Defendants - Appellees.

No. 05-6353

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 03-CV-245-R)**

---

Cynthia Rowe D'Antonio (Aletia Haynes Timmons, Timmons & Associates, L.L.C., Oklahoma City, Oklahoma with her on briefs), Perimeter Law Offices and Research Center, L.L.C., Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Stacey Haws Felkner (Robert E. Manchester, Susan Ann Knight with her on brief), Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

     On March 26, 2002, K.W., the then-twelve-year-old son of paraplegic

Plaintiff DeAnna West, telephoned 911 to request emergency assistance.

According to the transcript of that call, K.W. stated that his mother was "going crazy" and was "[t]rying to kill herself." (Defs.' Supp. App. at 28.) K.W. informed the 911 operator that his mother was "trying to cut her[self] with a knife" that he believed she had taken with her to the bathroom. (*Id.* at 28-29.) Police arrived, spoke briefly with K.W., and found Plaintiff slumped over the bathroom sink with her hands in the sink. Plaintiff was unresponsive to initial requests to show her hands, eventually raising them only to place them back in the sink. According to police testimony, Plaintiff stated: "Leave me alone, I want to die." (*Id.* at 234.) When the police removed Plaintiff from the bathroom, she became combative, swinging at the officers and spitting on at least one. After Plaintiff was placed under arrest, police found several bottles of medication lying about the bedroom and a steak knife in the bathroom sink. Plaintiff was then transported to a local hospital.

A crisis-intervention-trained officer, although the last on the scene, spoke with his fellow officers, with Plaintiff, and with K.W., who agreed to fill out a voluntary third-party statement regarding his mother's actions. In addition, that officer prepared an Affidavit for Emergency Detention that included K.W.'s statements as well as his own and the other officers' on-scene observations.

Plaintiff filed a § 1983 action against the police alleging violations of her Fourth Amendment rights in addition to various state law claims. Plaintiff moved *in limine* to exclude the Affidavit for Emergency Detention. Defendants'

counsel "confessed" that motion, and the affidavit was not admitted into evidence.

One day before trial, Plaintiff filed a motion under Fed. R. Civ. P. 50(a) for

judgment as a matter of law. The district court denied the motion after submitting

the case to the jury, but before the jury had reached a verdict. The jury returned a

verdict against Plaintiff, and this appeal followed.

We review a district court's ruling on a motion for judgment as a matter of

law de novo, applying the same standard as that applied by the district court. *See*

*McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006).

The gravamen of Plaintiff's argument is that the police lacked probable

cause to detain her because they violated provisions of the Oklahoma emergency

detention statute. Plaintiff asserts that upon Defendants' "confessing" the motion

in limine, the police seizure no longer complied with Okla. Stat. tit. 43A, § 5-

207(C), which requires a third party affidavit indicating the basis upon which

treatment is considered necessary if police do not personally observe that

behavior.[1]

---

[1] The relevant portion of the statute, entitled "Emergency detention of persons appearing to be mentally ill, alcohol-dependent or drug-dependent—Statements indicating basis for custody—Initial assessments" reads:

> C. The officer shall prepare a written statement indicating the basis for the officer's belief that the person is a person requiring treatment and the circumstances under which the officer took the person into protective custody. The officer shall give a copy of the statement to the person or the person's attorney upon the request of

(continued...)

Plaintiff argues that by "confessing" the motion in limine Defendants have concededthat the seizure did not comply. Because we need not resolve that dispute for purposes of this appeal, we assume that it did not.[2]

Although this is not a criminal case, "[t]he Fourth Amendment is not limited to criminal cases, but applies whenever the government takes a person into custody against her will." *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996). Plaintiff's appeal turns on her assertion that the state statute governing the seizure of mentally ill persons is an essential part of federal due process and that failure to comply with all its terms deprived the officers of the probable cause to enter her home and seize her without a warrant. However, it is clear that "violations of state law and police procedure generally do not give rise to a 1983

---

[1](...continued)
either. If the officer does not make the determination to take an individual into protective custody on the basis of the officer's personal observation, the officer shall not be required to prepare a written statement. However, the person stating to be mentally ill, alcohol-dependent, or drug-dependent or the person upon whose statement the officer relies shall sign a written statement indicating the basis for such person's belief that the person is a person requiring treatment. Any false statement given to the officer by the person upon whose statement the officer relies shall be a misdemeanor and subject to the sanctions of Title 21 of the Oklahoma Statutes.

Okla. Stat. tit. 43A, § 5-207(C).

[2] If Plaintiff is implying that the grant of the motion to prevent admission of the affidavit in evidence has the legal effect of suppressing the underlying facts contained therein, which were admitted by direct testimony, she is clearly mistaken.

claim" for excessive force, as is alleged in Plaintiff's complaint. *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995); *accord United States v. Villagrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006) ("Even assuming, without deciding, that the officer did violate state law, that violation would be irrelevant to the question of whether the warrants check violated [an individual's] Fourth Amendment rights."); *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) ("The officers' violation of state law is not, without more, necessarily a federal constitutional violation."); *Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997) (stating that failure to comply with the Massachusetts involuntary admission statute could not form the basis for a § 1983 claim).

Thus the sole question in this case is, viewing the record testimony without the affidavit, whether the officers had both probable cause and exigent circumstances justifying not only their warrantless entry but also their seizure. The Supreme Court has made clear, however, that police may enter a home without a warrant where they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. *Brigham City, Utah v. Stuart*, --- U.S. ----, 126 S. Ct. 1943, 1947 (May 22, 2006); *see also Georgia v. Randolph*, 547 U.S. ----, 126 S. Ct. 1515, 1525 (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur."); *United States v. Najar*, 451 F.3d 710 (10th Cir. 2006)

(applying *Brigham City* in affirming denial of motion to suppress evidence following police entry where 911 call was placed from residence, caller hung up, return calls by 911 dispatcher went unanswered, and occupant denied having called 911).

In light of these authorities, the evidence admitted by means other than the affidavit more than satisfies the minimum requirements of due process justifying the officers' actions. The 911 call from Plaintiff's twelve-year-old son, which included his belief that his mother was "going crazy," that she was "[t]rying to kill herself," that she was "trying to cut her[self] with a knife" and other statements to the same effect, are, standing alone and in context, sufficient to justify the warrantless entry. Once inside, the officers' own observations confirmed the son's fears and fully justified the warrantless seizure.

To the extent Plaintiff's appeal questions the district court's denial of the Rule 50(a) motion regarding the various state law claims, we see nothing in the record on appeal or Plaintiff's briefs that warrants reversal of the district court's decision.

In view of the foregoing, the trial court's denial of the Rule 50(a) motion is correct and the judgment is **AFFIRMED**.