FILED
United States Court of Appeals
Tenth Circuit

June 30, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

JOAN McINERNEY,

      Plaintiff-Appellant,

v.

      No. 13-1490

DENNIS KING,

      Defendant-Appellee.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-CV-01773-RPM)**

---

David A. Lane (Sarah M. Morris with him on the briefs) of Killmer Lane & Newman, LLP, Denver, Colorado, for Plaintiff-Appellant.

Skippere S. Spear, Senior Assistant Attorney General, Colorado Department of Law, Denver, Colorado, for Defendant-Appellee.

---

Before **MATHESON**, **SEYMOUR**, and **McHUGH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Joan McInerney filed suit pursuant to 42 U.S.C. § 1983 against Dennis King, a part-time officer with the Colorado School of Mines Police Department, and Deputy Sheriff Brian McLaughlin, alleging that their warrantless entry into her home violated the Fourth Amendment. Ms. McInerney appeals from the district court's grant of Officer King's motion for summary judgment based on qualified immunity. We reverse and remand.

**I**

"We review a grant of summary judgment based on qualified immunity *de novo*, applying the same legal standard used by the district court." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). In conducting our review, "[w]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (alteration in original) (internal quotation marks omitted). The facts, taken in the light most favorable to Ms. McInerney, are as follows.

In July 2009, Officer King was assigned to investigate a complaint that Ms. McInerney had shoved her ex-husband's girlfriend several feet in an incident on the School of Mines campus. During his investigation, Officer King contacted the ex-husband, Dr. John McInerney, who gave him an address for Ms. McInerney in Golden, Colorado. Officer King went to her home about 7:40 a.m. on Sunday, July 26, 2009, to serve her with a summons for harassment, a violation of the

Golden municipal code.[1]  He noticed two open front windows, one of which had no screen.  A third window had a piece of window trim hanging from it.  The front screen door was open and had a broken shock arm, and the front door was open about six inches.  The garage door was also open and belongings were strewn about inside.  No broken glass was visible anywhere.

Officer King did not knock on the door or announce his presence, and he did not attempt to contact Ms. McInerney by phone.  As he stated in an affidavit, the condition of Ms. McInerney's home "caused me concern, including over officer safety."  Aplt. App. at 89.  He concluded that the matter no longer involved solely the service of a summons, which was the extent of his authority off campus, so he contacted the Jefferson County Sheriff's Office.  While waiting for a deputy to arrive, he went to a nearby corner where he continued to watch the house, which remained quiet.

Deputy McLaughlin, an officer with twenty-five years of experience, arrived on the scene at 7:53 a.m.  Officer King briefed him on what he had observed.  Deputy McLaughlin asked Officer King if he had attempted to contact Ms. McInerney by phone, but he admitted he had not.  Officer King said in his deposition that he never told Deputy McLaughlin he thought there was an ongoing emergency.  He also admitted that he never noticed any broken glass or blood

---

[1] The City had filed a criminal misdemeanor complaint against Ms. McInerney in the Golden Municipal Court.

anywhere at the house. *Id.* at 212. He subsequently testified in Golden Municipal Court that it is not unusual for people to leave their windows open on hot summer nights. Aplt. Supp. App. at 135. At 8:06 a.m., thirteen minutes after Deputy McLaughlin arrived and twenty-six minutes after Officer King arrived, the two officers went to the front porch of the residence and knocked and announced their presence several times.

Neighbors responded, but no one came to the door. Ms. McInerney later testified that she was sound asleep in her bedroom so early on a Sunday morning with a noisy air conditioner three feet from the head of her bed, and that her car was parked out front. Deputy McLaughlin pushed the partially open front door all the way open,[2] revealing a laptop computer on a table within five feet of the door. At this point Deputy McLaughlin said to Officer King, "well, I guess we better do a welfare check and . . . see why the house is open." Aplt. App. at 219.

Deputy McLaughlin radioed his dispatcher to say he was entering the home to perform a welfare check. Officer King left his clipboard with the summons on the front porch, and both officers entered with their guns drawn. As subsequently described by the district court:

> With his firearm drawn, McLaughlin entered the house, followed by King who also had his weapon drawn. McLaughlin checked the living room and one bedroom, then found a closed door and again

---

[2] Deputy McLaughlin stated in an internal affairs interview that when he "[p]ushed the door open the rest of the way, [he] looked in the living room [and] nothing looked out of place." Aplt. App. at 213.

loudly announced his presence. When McLaughlin opened the door, he found Joan McInerney in her bed, awakened from sleep by the intrusion. She was partially dressed in a tank top and shorts. McLaughlin said that he was performing a welfare check. McInerney said she was not a crime victim, did not need medical assistance and was outraged by the intrusion. She refused to sign for the summons. King left it on a table and he and McLaughlin left after being inside the house for about 3 minutes.

*Id.* at 71. The officers left the house at 8:18 a.m., forty minutes after Officer King's initial arrival.

The day after the incident, Ms. McInerney stated in a telephone interview with an internal affairs investigator that she was furious, felt "totally violated," and that she was "still shaking" twenty-four hours after the incident. Aplt. Supp. App. at 218. She explained that she was asleep when Deputy McLaughlin stormed into her bedroom screaming and yelling at her while shining a flashlight in her eyes with his gun out of his holster. She also asserts she "informed the officers that she was not fully dressed," that the pajamas she was wearing "revealed her breasts and nipples visible through the transparent fabric," but that "[o]ne of the officers replied that she was 'dressed enough.'"[3] Aplt. App. at 12.

Ms. McInerney subsequently filed a motion to dismiss the criminal harassment complaint, asserting outrageous police conduct. The court heard testimony from both sides and then pointed out the lack of any indication "that

---

[3] Officer King confirmed in a Colorado School of Mines case report that after Ms. McInerney stated "she was barely clothed, Deputy McLaughlin advised her she was fully clothed." Aplt. App. at 160.

this defendant, before today, presented a danger to anyone." *Id.* at 191-92.

Concerned about the legality of the entry into Ms. McInerney's home, the court asked for further briefing.

The municipal court subsequently dismissed the harassment action with prejudice, concluding there was no need for Officer King to take any action after "returning to his patrol vehicle and observing nothing suspicious while waiting thirty minutes before taking action with Deputy McLaughlin." *Id.* at 36.  It added: "This court finds, such a total lack of 'an observable reasonable basis' to enter the residence of Joan McInerney, that such entry is a violation of her rights and liberty," and that "[t]his illegal entry is so far removed from being justified as to warrant action that will discourage similar activity by law enforcement personnel." *Id.*[4]

In July 2011, Ms. McInerney filed this § 1983 action against both officers, alleging her Fourth Amendment rights were violated when the officers entered her residence without a warrant, without her consent, and without any "legally recognizable exigent circumstances" justifying their warrantless entry.  *Id.* at 13. Officer King moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  In

---

[4] The City appealed the dismissal and the state district court reversed.  It held that the municipal judge applied the wrong standard in granting Ms. McInerney's motion to dismiss the complaint for outrageous police conduct because the officers' conduct in serving the summons had no bearing on Ms. McInerney's alleged misdemeanor offense.  Aplt. App. at 40.  The City dismissed the complaint the day after the reversal.  *Id.* at 43.

denying that motion, the district court noted "the stated justification of an emergency requiring police assistance is inconsistent with the admitted fact that Dennis King waited for 30 minutes until the arrival of the Sheriff Deputy McLaughlin."[5] *Id.* at 69.

Ms. McInerney stipulated to the dismissal with prejudice of all claims against Deputy McLaughlin in January 2012.[6] Upon completion of discovery, she moved for summary judgment on her remaining claim against Officer King. The district court denied the motion. In so doing, the court noted: "The defendant King contends that the entry is justified by exigent circumstances, relying on the authority of police officers to make a welfare check. That argument is not sustainable. Deputy McLaughlin violated the Fourth Amendment when he entered the plaintiff's front door and searched inside her residence." *Id.* at 71-72.

---

[5] An internal affairs investigation also found that Officer King violated Colorado School of Mines police department policy because he "was not in fresh pursuit, did not request assistance until after he observed the problems with the home, and initially was not in the presence of an officer for that jurisdiction." Aplt. App. at 165.

[6] The record does not reflect whether Deputy McLaughlin reached a settlement with Ms. McInerney, but on January 3, 2012, they both stipulated to "the dismissal of all of [Ms. McInerney's] claims against Defendant Brian McLaughlin with prejudice." Aplt. App. at 16. The record does reflect that she received a letter from the Jefferson County Sheriff's Department in October 2009 stating that her request for an internal investigation into Deputy McLaughlin's actions "revealed that the deputy's conduct violated Sheriff's Office policy," and that Deputy McLaughlin "received the appropriate discipline." Aplt. Supp. App. at 41. In fact, Deputy McLaughlin admitted in a deposition that if presented with the same exact circumstances today, he would not have entered Ms. McInerney's residence.

Although the court said there would be no difficulty in granting summary judgment against Deputy McLaughlin because of his warrantless entry into Ms. McInerney's home, "a legitimate question" remained concerning whether Officer King "has any responsibility for [the] entry and search if he simply followed the lead of an experienced peace officer and did not actively participate in the decision giving rise to the violation." *Id.* at 72.

Officer King subsequently filed a motion for summary judgment based on qualified immunity, which the district court granted. It ruled that Officer King was not personally responsible for Deputy McLaughlin's warrantless entry into Ms. McInerney's home because he had no authority to direct Deputy McLaughlin's actions. The court concluded that it was objectively reasonable for Officer King to enter the house behind Deputy McLaughlin to provide backup for the deputy's safety "in an uncertain and potentially dangerous situation." *Id.* at 259. The court said that no legal precedent would lead a reasonable police officer in Officer King's position to believe that doing so would violate Ms. McInerney's constitutional rights. It concluded that Officer King "did not personally participate in the unlawful entry and search and, at any rate, he is entitled to qualified immunity." *Id.* at 260.

## II

On appeal, Ms. McInerney contends the district court failed to view the

facts in the light most favorable to her. She argues the evidence supports a finding that Officer King personally participated in the unlawful entry, that his entry was not justified by exigent circumstances, and that he is not entitled to qualified immunity because he violated her clearly established constitutional rights. Officer King counters that he did not personally participate in Deputy McLaughlin's welfare check of the residence, and that in any event the welfare check was based on reasonable grounds to protect the safety of individuals inside the residence. He also contends his entry was justified to protect Deputy McLaughlin, and he is entitled to qualified immunity because Ms. McInerney has not shown he violated a clearly established constitutional right.[7]

"Qualified immunity protects 'government officials performing discretionary functions' and shields them from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In qualified immunity cases at the summary judgment stage, a plaintiff must . . . demonstrate on the facts alleged (1) that the defendant violated [her] constitutional or statutory rights, and (2) that the

---

[7] Ms. McInerney also contends Officer King proximately caused Deputy McLaughlin's entry and he is liable for his failure to prevent Deputy McLaughlin from entering her home. We need not address these arguments because we hold Officer King violated Ms. McInerney's clearly established constitutional rights by entering her home without a warrant or exigent circumstances.

-9-

constitutional right was clearly established at the time of the alleged unlawful activity." *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

## A.  Constitutional Violation – Warrantless Entry of a Home

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted); *United States v. Martinez*, 643 F.3d 1292, 1295 (10th Cir. 2011).  "It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'"  *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971) (plurality opinion); *Martinez*, 643 F.3d at 1295-96 ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978))).  "[E]xceptions to the warrant requirement are few in number and carefully delineated, and . . . the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984) (internal quotation marks and citation omitted); *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011) ("The burden is on the government

to demonstrate the existence of exigent circumstances.").

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted). Thus, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (citing *Mincey*, 437 U.S. at 392). As we recognized in *United States v. Najar*, 451 F.3d 710, 714-15 (10th Cir. 2006), the emergency aid exigency exception that emerged from *Mincey* was "informed by the practical recognition of critical police functions quite apart from or only tangential to a criminal investigation."

> [B]y design or default, the police are also expected to reduce the opportunities for the commission of some crimes through preventative patrol and other measures, aid individuals who are in danger of physical harm, assist those who cannot care for themselves, resolve conflict, create and maintain a feeling of security in the community, and provide other services on an emergency basis.

*Id.* at 715 (alteration in original) (internal quotation marks omitted).

In this context, we have held that exigent circumstances "exist when: (1) the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others, and (2) 'the manner

and scope of the search is reasonable.'" *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc) (quoting *Najar*, 451 F.3d at 718). "We evaluate whether a reasonable belief existed based on the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *United States v. Gambino-Zavala*, 539 F.3d 1221, 1225 (10th Cir. 2008) (internal quotation marks omitted). "Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." *United States v. Porter*, 594 F.3d 1251, 1258 (10th Cir. 2010). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Brigham City*, 547 U.S. at 404 (alteration in original) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). "The officer's subjective motivation is irrelevant." *Id.*

"'The existence of exigent circumstances is a mixed question of law and fact.'" *Martinez*, 643 F.3d at 1296 (quoting *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992)). "The ultimate question regarding the reasonableness of the search is a question of law which we review *de novo*." *Id.* (internal quotation marks omitted). We must thus decide, viewing the facts in the light most favorable to Ms. McInerney, whether exigent circumstances existed to justify Officer King's intrusion into her home without a warrant.

## 1. *Personal participation*

Essentially, Officer King contends he did not personally participate in any alleged constitutional violation because Deputy McLaughlin made the decision to enter the house to perform the welfare check and he was just following him. Officer King argues his mere presence in the house did not amount to a constitutional violation, relying on *Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007), and *Jenkins v. Wood*, 81 F.3d 988 (10th Cir. 1996). We are not persuaded.

Neither *Novitsky* nor *Jenkins* involved the warrantless entry of a home. In *Novitsky*, 491 F.3d at 1253-54, we held that an officer who was at the scene of a vehicle containing two inebriated men but who did not direct, assist in, or otherwise personally participate in another officer's use of a twist lock on the intoxicated arrestee could not be held responsible for that action. In *Jenkins*, 81 F.3d at 995, the officers "entered the premises in reliance on a valid warrant" to search an upstairs apartment. We noted that the plaintiffs did not contend the officer's "mere presence in the downstairs violated their Fourth Amendment rights." *Id.* at 996. Here, to the contrary, it is undisputed that Officer King entered Ms. McInerney's residence without a warrant. Accordingly, Officer King's own actions constituted a Fourth Amendment violation absent exigent circumstances.

-13-

## 2. *Emergency circumstances – welfare of occupant of home*

Officer King also contends that given the information available to him, "a reasonable officer could have believed there was a need to assure the safety of an individual in the residence, including Ms. McInerney's 11 year old daughter." Aple. Br. at 26. But he fails to explain how a reasonable person would reach that conclusion. Dr. McInerney apparently told Officer King that Ms. McInerney had a long history of drug and alcohol abuse; that three years earlier she had overdosed, could not be awakened by her children, and was hospitalized; that her behavior could be erratic, aggressive, and violent; that she was subject to a restraining order because of past violence toward her children; that there were several guns inside her home; and that the couple's eleven-year-old daughter lived with her part-time. Interestingly, however, when Officer King testified in Golden Municipal Court, he mentioned only that he had received an address from Dr. McInerney during his investigation prior to serving the summons. Neither did Officer King mention in his § 12(b)(6) motion to dismiss, filed in November 2011, that he had information Ms. McInerney was prone to violence, had a long history of substance abuse, had guns at the residence, or that her eleven-year-old daughter lived there. Nor did he mentioned these facts in his reply to Ms. McInerney's response to his 12(b)(6) motion. It was not until Officer King filed a motion for summary judgment in August 2013 that he first referred to these facts, which he claimed he received from Ms. McInerney's ex-husband, Dr.

-14-

McInerney.  In any event, none of these facts "establish objectively reasonable grounds of an emergency, i.e., an *immediate need* to protect [the officers'] lives or others from serious injury or threatened injury."  *Cortez*, 478 F.3d at 1124 (emphasis added).

In *Brigham City*, 547 U.S. at 406, where the Court found that exigent circumstances justified a warrantless entry, the officers were responding to a 911 call at 3:00 a.m. about a loud party at a residence.  When they arrived they heard an altercation occurring inside the home, including "thumping and crashing" and someone yelling "stop, stop" and "get off me."  *Id.* (internal quotation marks omitted).  After following the noise to the back of the house, the officers observed two minors drinking alcohol in the backyard, and they could see a fight taking place in the kitchen involving several adults and one juvenile.  *Id.*  When the officers witnessed one adult being injured and the continued skirmish among the other people, one officer opened the screen door and announced his presence, then entered the kitchen, causing the occupants to notice the police presence and cease their scuffle.  *Id.* at 401, 406.  The Court held:

> In these circumstances, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning.  Nothing in the Fourth Amendment required them to wait until another blow rendered someone "unconscious" or "semi-conscious" or worse before entering.

*Id.* at 406.

Significantly, Officer King was not responding to an emergency call when he entered Ms. McInerney's house. As we have recognized, "911 calls are the predominant means of communicating emergency situations." *Najar*, 451 F.3d at 719 (internal quotation marks omitted). In *Najar*, we held that exigent circumstances justified a warrantless entry after an early morning 911 call was disconnected and attempts by police dispatch to further contact the home resulted in multiple hang-ups. *Id.* at 720. The officers at the residence observed someone inside the house who was not responding when they knocked and announced. *Id.* at 716. That person eventually answered the door and denied calling 911, but also stated he was the only person in the home. *Id.* at 720. We held that, "[g]iven the totality of the circumstances, the officers had reasonable grounds to believe someone inside the trailer may have been in need of emergency aid and immediate action was required." *Id.*

Nor, as in *Brigham City*, did Officer King hear or witness any disturbance within Ms. McInerney's house. Officer King observed the residence for almost 35 minutes before entering. The officers did not overhear any commotion from where they stood a block away, or even standing on her front porch. Nor did they observe any altercation occurring through the open windows or door. They witnessed no activity in the home whatsoever. And there was no evidence that anyone was inside Ms. McInerney's home, much less a person in need of immediate, emergency assistance.

Although Officer King was told there were guns in Ms. McInerney's house, there had been no report of gunfire or any threat involving a gun.[8]  In contrast, in *United States v. Thomas*, 372 F.3d 1173, 1177-78 (10th Cir. 2004), the officers

> faced a situation in which there were firearms inside the home, it was unclear how many people were inside the home, and the circumstances gave rise to a reasonable fear that the firearms might be used against the officers or others.  The officers had just broken up a heated argument in which a firearm had been brandished, one of the participants in that argument had defied police orders and stashed the gun in a rear area of the apartment, and the officers had no way of knowing if there were others in the apartment with access to the gun.

*See also Gambino-Zavala*, 539 F.3d at 1225 ("[I]t is well settled that officers can reasonably search [an apartment] for victims upon reports of gunfire."); *United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007) (exigent circumstances supported warrantless entry where defendant responded to officers' knocks on front door by stating, "Yeah, and I got a goddamn gun").

Officer King was also informed that Ms. McInerney had a history of drug and alcohol abuse.  But he had no information that she was incapacitated in any way at the time he visited her home.  This is not a case like *West v. Keef*, 479 F.3d 757 (10th Cir. 2007), where a twelve-year-old child called 911 to request

---

[8] Ms. McInerney asserts that neither Officer King's contemporaneous reports regarding the incident nor his later testimony suggests that Dr. McInerney's allegations about her had any effect on Officer King's decision to enter her home without a warrant.  But again, the officer's subjective motivation is irrelevant.  *Brigham City*, 547 U.S. at 404.  And Ms. McInerney has not disputed that Officer King received the information from Dr. McInerney.

emergency assistance for his mother, saying that she was "going crazy" and "trying to kill herself" – statements which we held were, "standing alone and in context, sufficient to justify the warrantless entry." *Id.* at 759 (internal quotation marks and alteration omitted). Finally, while Officer King was aware that Ms. McInerney's eleven-year-old daughter lived with her part-time, he had no information that the daughter was at Ms. McInerney's residence when he came to serve her with the summons. He has "offered nothing, beyond innuendo and speculation," *Cortez*, 478 F.3d at 1124, to establish that anyone inside of Ms. McInerney's house was in need of immediate aid at that time.

Finally, the record shows no evidence in the record of forced entry or theft. In fact, when Deputy McLaughin pushed the front door all the way open, a laptop was visible on a table near the front door. Nor does Officer King explain why any adverse inference should be drawn from having one's door and windows open on a summer night. He does assert the fact that "the garage door was open and the contents were strewn about outside" added to his suspicion and caused him to call Deputy McLaughlin. As we pointed out in *Martinez*, 643 F.3d at 1297, however, "the messy state of the house, the electronics boxes, and the unlocked balcony door" did not "add much to the equation," because "[a] person's failure to keep an orderly home should not subject him or her to a warrantless search by police."

In sum, if the nonspecific and dated information from Dr. McInerney plus a

-18-

messy house and open doors and windows when the weather is warm could justify the entry that morning, it could have justified an entry on almost any occasion. To be sure, "[t]he sanctity of the home is too important to be violated by the mere possibility that someone inside is in need of aid – such a 'possibility' is ever-present." *Id.* at 1299-1300. Taking all the circumstances into consideration and viewing the facts and inferences therefrom in the light most favorable to Ms. McInerney, we conclude a reasonable officer in Officer King's position would not believe that entry was required to take care of an immediate need to protect inhabitants of the home.

### 3. *Officer safety*

Officer King argues alternatively that even if Deputy McLaughlin's entry was improper, it was reasonable for him to follow Deputy McLaughlin into the house to provide back-up protection. Essentially, he contends the officer safety exigency exception to the warrant requirement justified his entry. He points to expert testimony from Michael T. O'Neil, a retired thirty-seven year veteran police officer, who stated that "[a] reasonable officer would follow [Deputy] McLaughlin into the residence to provide for his safety," because it would not have been "appropriate for [Officer] King to remain outside while [Deputy] McLaughlin enter[ed] into a potentially precarious situation by himself." Aplt. App. at 112. But context matters, and in the circumstances of this case, we disagree.

-19-

First, "law enforcement officers may not 'create' the exigency justifying their intrusion into a home." *United States v. Martin*, 613 F.3d 1295, 1304 (10th Cir. 2010); *United States v. Bonitz*, 826 F.2d 954, 957 (10th Cir. 1987) (holding no exigent circumstances existed where "the only immediate danger that existed was created by the officers themselves when they entered the secure area and began to handle these materials"); *see also United States v. Chambers*, 395 F.3d 563, 566 (6th Cir. 2005) ("[F]or a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves."), *overruled on other grounds by Kentucky v. King*, 131 S. Ct. 1849 (2011). As the district court found, Deputy McLaughlin's warrantless entry clearly violated Ms. McInerney's Fourth Amendment right to be free from a warrantless entry into her home. Deputy McLaughlin created any possibility of harm to himself by unlawfully entering the house, and Officer King cannot justify his entry by a need to protect Deputy McLaughlin where no emergency existed to justify Officer McLaughlin's entry.

Officer King counters that he played no role in the decision to initiate the entry and that he was merely following the lead of Deputy McLaughlin after the Deputy made an independent decision to enter the house. The Eleventh Circuit rejected a similar argument in *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004). There, a probation officer followed police officers into a private business closed to the public. *Id.* at 1204. The office manager initially refused to let them

enter but reluctantly opened the door following the officers' repeated banging on it, which almost broke it down. *Id.* Police then arrested the office manager "for resisting arrest, but later changed the charge to obstruction of justice." *Id.* at 1204-05. The employee filed a § 1983 action against the police officers, the city, and the probation officer, claiming among other things that her Fourth Amendment rights had been violated. *Id.* at 1205. Hayes, the probation officer, unsuccessfully moved for summary judgment based on qualified immunity. *Id.*

The court affirmed on appeal, holding that the office manager had a reasonable expectation of privacy in the office and that no exigent circumstances justified the probation officer's warrantless entry. *Id.* at 1208-10. Relevant to this case, Hayes made a last ditch argument "that he did not make the initial decision to enter the office, but instead merely followed the other officers inside, 'defer[ring]' to their judgment." *Id.* at 1210 (alteration in original). In rejecting this argument, the court explained that "[w]hether or not the police officers accompanying Hayes decided to enter O'Rourke's office, their unconstitutional behavior did not relieve Hayes of his responsibility to decide for himself whether to violate clearly established constitutional rights by intruding into the office without a warrant or exigent circumstances." *Id.* The court reasoned:

> In short, though Hayes was not the mastermind behind the violation of constitutional rights that occurred here, he must take responsibility for his actions, and may be held accountable in a court of law. Had he taken even a moment to consider the clearly established law of this circuit, he would not have followed the lead of the other officers

-21-

in entering O'Rourke's office.

*Id.*

Similarly, Officer King must take responsibility for his decision to enter Ms. McInerney's house without a warrant or exigent circumstances. We can imagine a possible factual scenario where Officer King's entry would not have been unlawful, such as a situation where the back-up officer had no knowledge of the facts and circumstances and relied in good faith on the other officer's statements concerning exigency or probable cause, *see*, *e.g.*, *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) ("[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." (internal quotation marks omitted)). But the record here makes it clear that both officers had the same information available to them at the time of entry. *Cf.*, *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 882 (10th Cir. 2014) (citing cases prior to 2009 and stating "the 'good faith' defense shields objectively reasonable good faith reliance on the statements of a fellow officer, but does not protect deliberate, reckless, or grossly negligent reliance on the flawed conclusions of a fellow officer").

The evidence and reasonable inferences therefrom, interpreted in the light most favorable to Ms. McInerney, is sufficient for a jury to conclude that Officer King's warrantless entry into her residence violated Ms. McInerney's clearly

established Fourth Amendment rights.

## B. Clearly Established Law

Although Ms. McInerney satisfied her burden to demonstrate that Officer King violated her Fourth Amendment rights by entering her home without a warrant or exigent circumstances, she still must show that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson*, 577 F.3d at 1199. Officer King argues it was not clearly established "that providing backup for a superior officer conducting a welfare check violates the Fourth Amendment." Aple. Br. at 36. He claims this is particularly true "where he did so out of concerns for officer safety." *Id.* at 37.

"For a right to be clearly established there must be a Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." *Mascorro*, 656 F.3d at 1208; *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotation marks omitted)); *Swanson*, 577 F.3d at 1200 (same). "Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Mascorro*, 656 F.3d at 1207-08 (alteration in original). Indeed, "[i]f the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer

-23-

should not be subject to liability or . . . the burdens of litigation." *Id.* at 1208.

"It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Accordingly, it is not enough to simply assert that "the right to be free from warrantless searches of one's home unless . . . there are exigent circumstances [] was clearly established." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, we must "consider the argument that it was *not* clearly established that the circumstances with which [Officer King] was confronted did not constitute . . . exigent circumstances." *Id.* at 640-41.

"But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope*, 536 U.S. at 741 (alteration in original) (internal quotation marks omitted). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* That is especially true in this context, where the analysis "requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal quotation marks omitted). Moreover, "[e]xceptions to the warrant

requirement have been jealously and carefully drawn." *United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 2002) (internal quotation marks omitted). Accordingly, "[o]ur focus must be on whether an exception to bedrock constitutional principles clearly exists." *Mascorro*, 656 F.3d at 1209.

Before we address Officer King's argument, we note it was clearly established as of July 26, 2009, that exigent circumstances must involve an urgent law enforcement need. *See Cortez*, 478 F.3d at 1124. As our previous discussion illustrates, the cases in which we have concluded that exigent circumstances justified a warrantless entry all involved facts and circumstances supporting an officer's reasonable belief that someone inside a home was in immediate danger. These types of emergency situations are completely missing from this case.

It also was clear as of July 2009 that an officer's observations of an open door to a commercial building at night were not "in and of itself, an occurrence that reasonably and objectively creates the impression of an immediate threat to person or property as to justify a warrantless search of the premises." *United States v. Bute*, 43 F.3d 531, 539 (10th Cir. 1994). This was so even though "there is a lesser expectation of privacy in commercial as contrasted with residential buildings." *Id.* at 536. Finally, it was clearly established, as we discussed *supra* at 19-20, that law enforcement officers cannot create an exigency justifying their actions. *Martin*, 613 F.3d at 1304; *Bonitz*, 826 F.2d at 957.

Officer King argues it was not clearly established that it was

-25-

constitutionally impermissible to enter a home without a warrant to provide back-up assistance to a fellow officer out of officer safety concerns where the officers were "faced with a potentially intoxicated individual, who may [have been] armed while children [were] present." Aple. Br. at 37. But as the record makes clear, neither officer observed anything that would have led a reasonable officer to conclude there was an ongoing emergency involving an intoxicated individual with a gun.

Officer King cites *Jenkins*, 81 F.3d 988, and *Novitsky*, 491 F.3d 1244, in arguing the law was not clearly established. As we already discussed, however, these cases are not applicable because neither involved a warrantless entry into a residence. Nor do the cases hold that an officer may enter a residence without exigent circumstances or a warrant to provide back-up protection for another officer.

Officer King's reliance on *Motley v. Parks*, 432 F.3d 1072, 1079, 1082 (9th Cir. 2005) (en banc), *overruled on different grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc), and *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004), is equally misplaced. In *Motley*, the court held the officers had a reasonable belief that a parolee was in the residence and therefore had probable cause to conduct a warrantless parole search. 432 F.3d at 1082. In *Johnson*, 379 F.3d at 304-05, the backup officer who followed DEA agents into a building was held not to have

violated the Fourth Amendment when executing a search warrant during a drug bust because it was "undisputed that the members of Team three were under the direction of team leader DEA agent Marshall and 'were to follow his instructions and the DEA procedures for executing the warrants.'"  Significantly, the agents in that case had an arrest warrant, unlike here.  *Id.* at 297-98.

Although there is no Tenth Circuit or Supreme Court precedent dealing with the exact factual scenario we have here, "there will almost never be a previously published opinion involving exactly the same circumstances," and "[w]e cannot find qualified immunity wherever we have a new fact pattern." *Casey*, 509 F.3d at 1284.  To be sure, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741.  Simply put, Officer King had fair notice that his conduct in entering Ms. McInerney's house without a warrant was unlawful.  Moreover, based on the existing case law at the time of Officer King's warrantless entry – both those cases finding exigent circumstances and those holding such circumstances were not present – it was clearly established that the circumstances he confronted did not constitute exigent circumstances.  Finally, it was clearly established that officers may not create exigent circumstances to justify their actions.  Thus, the

-27-

district court erred in granting Officer King summary judgment based on qualified immunity.

Accordingly we REVERSE and REMAND for further proceedings consistent with this opinion.