**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DALE M. ARDEN,

     Plaintiff - Appellant,

v.

MICHAEL MCINTOSH, in his official
capacity as Sheriff for County of Adams,
Colorado;* LILIANA BONDELL,
Deputy Sheriff, in her professional
capacity as Deputy Sheriff for County of
Adams, Colorado and her personal
capacity,

     Defendants - Appellees,

and

JOHN DOES 1 & 2, in their professional
and personal capacities,

     Defendants.

No. 14-1517
(D.C. No. 1:12-CV-03099-RM-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

    * In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Michael McIntosh is substituted for Douglas N. Darr as a
defendant-appellee in this action.

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Dale M. Arden brought this action under 42 U.S.C. § 1983 alleging that Deputy Sheriff Bondell violated his Fourth and Fourteenth Amendment rights by searching his residence and seizing his firearms without a warrant. He also sued Michael McIntosh, the Sheriff for Adams County, Colorado, for failing to develop relevant policies and for failing to train and supervise the deputy sheriffs. The district court determined that no constitutional violation had occurred and granted the defendants qualified immunity. We affirm the summary judgment based on qualified immunity, albeit on different grounds than those stated by the district court.

I.    BACKGROUND

The underlying facts are undisputed. On August 10, 2010, Paula Moody made an emergency 911 call to report that Mr. Arden had called her, slurring his words, and told her he was taking pills and would continue to do so because nobody cared about him. Defendant Bondell, an Adams County Sheriff's Deputy, was one of the deputies dispatched to Mr. Arden's home where she found the front door open. She announced her presence and entered. Mr. Arden was in a bedroom. Deputy Bondell checked Mr. Arden and his surroundings for weapons and observed several firearms in the bedroom. Mr. Arden was incoherent and unresponsive. Emergency medical technicians soon arrived and assisted Mr. Arden to an ambulance. He was taken to the hospital and placed on an emergency mental health hold because he appeared to

2

be an imminent danger to himself.  Deputy Bondell checked the "call history" for the residence and learned that Mr. Arden had overdosed on July 31, 2010, ten days earlier.

After Mr. Arden was taken away, Deputy Bondell collected 23 firearms and ammunition, all in plain sight in the home, and placed them in the trunk of her patrol car.  She later booked them for safekeeping at the police station.  After Mr. Arden was released from the hospital, the firearms and ammunition were returned to him.

Mr. Arden filed suit in state court alleging various causes of action.  The defendants removed the case to federal court.  *See* 28 U.S.C. §§ 1331 (federal question jurisdiction); 1441(a) (removal of civil actions).  In due course, the defendants moved for summary judgment, claiming they were entitled to qualified immunity.  The district court granted the motion, holding that no constitutional violation had occurred.  Mr. Arden appeals, arguing that Deputy Bondell's warrantless search of his home and seizure of his firearms violated the Fourth Amendment.  He also asserts that the Sheriff failed to establish proper policies for searches and seizures and failed to properly train and supervise Deputy Bondell.  He has abandoned on appeal his remaining claims.

## II.    STANDARDS OF REVIEW

We review de novo the district court's grant of summary judgment based on qualified immunity, employing the same standard as the district court.  *McInerney v. King*, __ F.3d ___, No. 13-1490, 2015 WL 3953686, at *1 (10th Cir. June 30, 2015).  "We view the evidence and draw reasonable inferences therefrom in the light most

3

favorable to the nonmoving party." *Id.* (brackets and internal quotation marks omitted).

## III. ANALYSIS

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted). "[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *United States v. Martinez*, 643 F.3d 1292, 1295-96 (10th Cir. 2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)). "The burden is on the government to demonstrate the existence of exigent circumstances." *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). At the summary judgment stage, the burden is on the plaintiff to identify sufficient facts to satisfy both factors. *McInerney*, 2015 WL 3953686, at *4.

### A. Violation of a Constitutional Right

Mr. Arden concedes that Deputy Bondell's warrantless entry into his home was justified by the exigency of the risk to his health. *See Brigham City v. Stuart*,

4

547 U.S. 398, 403 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."). Rather, he contends that once he was taken from his home to the hospital, the exigency had ended; therefore, Deputy Bondell's warrantless search and seizure were not justified.

Deputy Bondell argues that her actions were authorized by the community caretaking function by which she sought to protect Mr. Arden and the community from harm. "[C]ommunity caretaking functions [are police actions] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). Police officers are expected to perform functions apart from criminal investigations, including "preventative patrol and other measures, *aid[ing] individuals who are in danger of physical harm*, assist[ing] those who cannot care for themselves, resolv[ing] conflict, creat[ing] and maintain[ing] a feeling of security in the community, and provid[ing] other services on an emergency basis." *United States v. Najar*, 451 F.3d 710, 715 (10th Cir. 2006) (emphasis added) (internal quotation marks omitted).

Deputy Bondell's initial cursory search for firearms, which were in plain sight and some of which were within Mr. Arden's reach, and her temporary seizure of the firearms, were justified in the interests of safety of the police and emergency-medical personnel during a community caretaking call. *See Storey v. Taylor*, 696 F.3d 987, 992-93 (10th Cir. 2012) (discussing two-part test for "determining whether the risk of

5

personal danger creates exigent circumstances"). Mr. Arden does not seriously dispute Deputy Bondell's authority to secure the premises for reasons of police and medical-personnel safety.

As for the search and seizure of the firearms after Mr. Arden had left for the hospital, viewing the evidence in the light most favorable to Mr. Arden, the exigent situation had ended when Deputy Bondell seized his firearms and placed them in the trunk of her patrol car. The authorities had already determined that no one else was present in the home. Mr. Arden had been taken to the hospital. There was no indication that Mr. Arden's possession of the guns was illegal. The defendants have cited no authority, and we have found none, authorizing a police officer to confiscate weapons that would otherwise be left in an unoccupied house. The evidence and reasonable inferences therefrom interpreted in the light most favorable to Mr. Arden are sufficient for a jury to conclude that Deputy Bondell's seizure of his firearms beyond the immediate need to protect officer safety during an emergency violated the Fourth Amendment. *Cf. United States v. Chadwick*, 433 U.S. 1, 15 (1977) (addressing search-incident-to-arrest exception to warrant requirement, stating once police officers have taken control of arrestee's personal property such that there is no longer any danger that the arrestee might seize a weapon, a search of that property is not an incident of the arrest), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 579 (1991); *United States v. Lugo*, 978 F.2d 631, 635 (10th Cir. 1992) (finding no exigency to justify a warrantless automobile search after the defendant was taken from the scene because "there was obviously no threat that he might reach

6

in his vehicle and grab a weapon"); *United States v. Mallory*, 765 F.3d 373, 388 (3rd Cir. 2014) (holding that after police officers had secured the premises and handcuffed the suspect, the "exigencies of the moment had abated and the warrant requirement reattached").

## B. Clearly Established Law

Although Mr. Arden met his burden to show that his constitutional right was violated, he must also demonstrate that "the constitutional right was clearly established at the time of the alleged unlawful activity." *McInerney*, 2015 WL 3953686, at * 4 (internal quotation marks omitted).[1] "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).

---

[1] Because the district court found no constitutional violation, it did not address whether the law was clearly established. "[W]e may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). The issue of whether the law was "clearly established" is a question of law. *See Aldaba v. Pickens*, 777 F.3d 1148, 1154 (10th Cir. 2015), *petition for cert. filed*, 83 USLW 3934 (U.S. June 17, 2015) (No. 14-1492) (noting whether the law was clearly established at the time of the alleged violation is a purely legal question). Therefore, in the interests of judicial economy and on the undisputed facts, we may decide the issue in the first instance. *See Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1264 (10th Cir. 2001) (holding appellate court may decide in the first instance a question of law not reached by the district court ). We have reviewed the parties' briefs on this point that were filed in the district court.

A police officer is shielded from suit, even though her decision is constitutionally deficient, if she reasonably misconstrues the law applicable in the circumstances. *Mascorro*, 656 F.3d at 1207. The inquiry is "whether the officer had fair notice that her conduct was unlawful, [so] reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The relevant inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks omitted). Thus, we look for "clear law (clear answers) that would apply to the situation at hand." *Id.* at 199 (internal quotation marks omitted). The "salient question . . . is whether the state of the law [at the time of the actions] gave respondents fair warning that their [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Accordingly, we examine the state of the law in August 2010 to determine whether it was clearly established that in serving a community caretaking function, a police officer was prohibited from removing firearms from the home of the suicidal homeowner. Deputy Bondell was faced with the following circumstances: a 911 emergency call reported a suicidal party/drug overdose; she arrived to find Mr. Arden in his bedroom, incoherent and unresponsive to the point of needing help to walk to the ambulance, so he could be taken to the hospital where he was placed on a mental health hold; she observed several firearms in plain sight, some in Mr. Arden's bedroom within his reach; and she was aware that Mr. Arden had attempted suicide just ten days earlier. We have found no authority clearly establishing that firearms

8

may not constitutionally be removed from a residence under these circumstances.[2]

Therefore, we conclude that a reasonable officer could believe that she was

authorized to remove the firearms temporarily. This is sufficient to establish Deputy

Bondell's qualified-immunity defense as a matter of law.

### C. Official Policy, Training, and Supervision

Mr. Arden also appeals the district court's entry of summary judgment on his

claim that the Adams County Sheriff, in his official capacity, is liable for the

constitutional violations.[3] He contends that the Sheriff failed to provide proper

policies, training, and supervision. On appeal, he argues that the Sheriff's alleged

failures constituted deliberate indifference to his Fourth Amendment rights, which is

a showing he is required to make, *see City of Canton v. Harris*, 489 U.S. 378, 388

(1989) ("We hold today that the inadequacy of police training may serve as the basis

for § 1983 liability only where the failure to train amounts to deliberate indifference

to the rights of persons with whom the police come into contact."); *Kramer v.*

*Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) (holding where

---

[2] Subsequent to the events in this case, the Seventh Circuit held, "[A] reasonable police officer might have thought, upon discovery of [a] gun [in a residence during a welfare check] that he was authorized by his community caretaking function to seize the gun for safekeeping." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 578 (7th Cir.), *cert. denied*, 135 S. Ct. 478 (2014).

[3] "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Accordingly, "we apply the standard of liability to municipalities and counties in assessing whether [the plaintiff's] official capacity claim[s] for failure to train[, supervise, and promulgate an adequate policy] survive[] summary judgment." *Id.*

plaintiff claims a municipal policy caused an employee to inflict injury, plaintiff's burden includes a showing "that the municipal action was taken with deliberate indifference to its known or obvious consequences" (internal quotation marks omitted)); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (including deliberately indifferent training or supervision in list of practices that may be deemed an official policy or custom for § 1983 municipal-liability purposes). But as the district court noted, Mr. Arden did not raise in that court his deliberate-indifference argument. The court stated, "Plaintiff fails to show (or even argue) that the Adams County Sheriff's Office engages in deliberately indifferent training or supervision when it allows an individual police officer to make the decision to search and seize property." Aplt. App. at 161 (internal quotation marks omitted). Because Mr. Arden did not present his deliberate-indifference argument to the district court in the first instance, we will not consider it for the first time on appeal. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[A]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."). Moreover, because Mr. Arden has not challenged on appeal the district court's finding that he failed to raise a deliberate-indifference argument, we deem the issue waived. *See Schaffer v. Clinton*, 240 F.3d 878, 880 n.1 (10th Cir. 2001) (the failure to address the district court's ruling waives the issue).

## IV. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11